# Ex Parte Fairley *et al.*

(Division B. Feb. 1, 1932.)

[139 So. 399. No. 29807.]

**E. W. Breland**, of Leakesville, for appellants.

**W. A. Shipman**, Assistant Attorney-General, for the state.

458

**Anderson, J.**, delivered the opinion of the court.

This is an appeal prosecuted by appellants from a judgment of the circuit court of Greene county denying their petition for the statutory reward of one hundred dollars for the apprehension, arrest, and delivery up to the sheriff of that county for trial, of Ella McLeod, claimed by them to have been a fleeing homicide at the time. Appellants claim the reward under authority of section 1239 of the Code of 1930, which is in this language: "A person who shall arrest any one who kills another and is fleeing, or attempting to flee, before arrest, and shall deliver him up for trial, shall be entitled to the sum of one hundred dollars out of the treasury of the county in which the homicide occurred, upon the allowance of the circuit court and the board of supervisors of the county in the manner provided by law."

The evidence showed, without dispute, the following facts: In January, 1931, Ella McLeod, a negro woman, shot and killed Ernest May, a negro man. The killing took place about daylight at the home of the deceased in Greene county, and immediately thereafter Ella McLeod fled from the scene and secreted herself in a swamp in a creek bottom about two and a half miles from the place of the homicide and about five miles from her own home. The sheriff was informed of the homicide and with some of his deputies, and other persons, went to the scene of the killing, and thereafter during the day they were engaged in a search for Ella McLeod. Among those engaged in the search were the appellants. That night about seven o'clock appellant Hubbard Fairley, who was engaged in the search with the appellant Charles

Huggar, found Ella McLeod hiding in a creek swamp, which, as stated, was about two and a half miles from the scene of the killing and about five miles from her home. After discovering her, appellant Fairley left her for a while and went to appellant Huggar and induced him to join with him in going back to her place of hiding. They thereupon returned and found her, and together conveyed her to the county seat and delivered her to the sheriff of the county, who lodged her in jail.

Ella McLeod testified, and her testimony is undisputed by any witness, that she shot at the deceased twice and ran away; that she did not know whether either of the shots took effect or not—in other words, that she did not know whether she had killed him or not, but was afraid that she had not, and fled to the swamp in the creek bottom because she was afraid the deceased would pursue and kill her—that that was the reason she remained all day in hiding, and not through fear of arrest for the homicide.

The statute provides that any person who shall arrest any one who kills another and is fleeing, or attempting to flee, before arrest, and shall deliver him up for trial, shall be entitled to the reward. As stated above, the evidence showed without conflict that Ella McLeod killed Ernest May early in the morning and immediately fled and spent the day in hiding. The purpose of the statute is to prevent the escape of fleeing homicides and promote their speedy arrest and trial. To that end the statute is to be liberally construed in favor of any person making the arrest and delivering up the homicide for trial. Warren County v. Lanier, 87 Miss. 606, 40 So. 429; Ex parte Webb, 96 Miss. 8, 49 So. 567; Ex parte Austin, 129 Miss. 869, 93 So. 369.

The claim of the fleeing homicide that the flight was not for the purpose of avoiding arrest, but for another and a different purpose, will not defeat the claim for the reward. Where there is a killing followed by the flight

of the homicide, the conclusive presumption is that such flight was for the purpose of avoiding arrest. The statute contains no exception; it gives the reward to any person arresting and delivering up a fleeing homicide. Ella McLeod's testimony was as to her state of mind—her purpose in the flight. Naturally it could not be contradicted except possibly by the surrounding facts and circumstances, and in this case they strongly indicate that her flight was for the purpose of avoiding arrest and not to escape harm at the hands of the deceased. But, as stated, the court will not inquire into her state of mind. The homicide, flight, apprehension, arrest, and delivery up by appellants is all that is necessary to entitle them to the reward. In a criminal prosecution, flight of the accused is evidence tending to show guilt. The accused therefore has the incentive to swear falsely as to the purpose of his flight; it is to his interest to show that his flight was not for the purpose of avoiding arrest, but for some other purpose not harmful to him. The probability, therefore, is that if the claim for the reward could be defeated by the homicide's testimony as to the purpose of his flight, oftentimes it would be unjustly defeated.

Reversed, and judgment here for appellants.